United States District Court
Southern District of Texas
**ENTERED**
September 26, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| D2 EXCAVATING, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:16-CV-538 |
| | § | |
| THOMPSON THRIFT CONSTRUCTION, | § | |
| INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are: (1) Defendants' Motion for Summary Judgment (D.E. 21); (2) Defendants' Motion for Leave and Objections regarding summary judgment evidence (D.E. 34); and (3) Plaintiff's Motion for Leave to File Amended Objections to Defendants' Motion for Leave (D.E. 37). For the reasons set out below, the Court GRANTS the motions for leave (D.E. 34 and 37) and DENIES the motion for summary judgment (D.E. 21).

## ALLEGATIONS

Plaintiff D2 Excavating, Inc. (D2) filed this action in state court against Defendants Thompson Thrift Construction, Inc. and Fidelity and Deposit Company of Maryland (jointly Thompson Thrift),[1] alleging, in part, claims for breach of contract and quantum meruit. Thompson Thrift removed the case to this Court pursuant to diversity jurisdiction, 28 U.S.C. § 1332.

---

[1] Thompson Thrift Construction, Inc. acted as the general contractor for Watermark at Timbergate Corpus Christi, LLC, the owner of the project. Fidelity and Deposit Company of Maryland is sued as surety on a bond furnished to guarantee payment of D2's claim, thus discharging a mechanic's lien D2 had filed against the project. D2's claim on the bond is not directly challenged in this summary judgment proceeding.

D2 contends that Thompson Thrift solicited bids and executed a contract for the excavation of a site on which an apartment complex would be built, representing that the site was "balanced." After Thompson Thrift accepted D2's bid and D2 began work, D2 discovered that the site was not balanced. Instead, it required additional excavation and removal of soil. D2 claims that the additional work was not contemplated by the contract and that Thompson Thrift requested that it be done, promising to execute change orders so that D2 would be paid, as soon as the amount of work and the requisite charges were determined. D2 claims that previous additional work was handled this way; change orders were issued after-the-fact and payments were made. However, on this occasion, D2 did the additional work requested, yet Thompson Thrift refused to execute the promised change order and pay D2. *See* D.E. 1-2. D2 seeks to recover under a quantum meruit theory or, alternatively, for breach of contract for the failure to pay the remaining subcontract balance and the charges it agreed to pay through promised change orders. *Id*.

Thompson Thrift filed a counterclaim, alleging that D2 over-excavated the site and then abandoned and did not complete the work required by the contract. As a result, Thompson Thrift was required to hire a new excavation subcontractor to complete the work and remediate the problems D2 created on the site. Thompson Thrift alleges claims for breach of contract, breach of warranty, indemnification, filing a fraudulent lien, and for declaratory relief that D2's lien is invalid and unenforceable. *See* D.E. 14, 27, 33.

Before the Court is Thompson Thrift's motion for summary judgment seeking to eliminate D2's claims through the allegedly comprehensive terms of their Subcontract Agreement. D.E. 21. D2 has responded (D.E. 23) and both parties have filed replies

(D.E. 25, 31). Since then, both parties have filed motions for leave to file additional replies (D.E. 34, 37) and D2 opposes Thompson Thrift's request for leave (D.E. 35). This case is in its early stages. So that all of the parties' arguments are before the Court, the Court GRANTS the motions for leave (D.E. 34, 37).

## STANDARD OF REVIEW

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Ordinarily, a genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In that circumstance, the court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52. In making this determination, the court must draw all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).

Here, however, Thompson Thrift has chosen to accept, for purposes of this motion, that D2's allegations are true, essentially conceding the existence of evidence that would raise a disputed fact issue—if that fact issue is material and relevant to a determination of the claims. In other words, Thompson Thrift has assumed the burden to show that the contract documents, alone, eliminate all fact issues, regardless of what other evidence may be offered. As the moving party, Thompson Thrift bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If it fails to do so, its motion concedes that any

material allegations of fact issues will preclude its summary judgment. *Cf. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (placing the burden of demonstrating evidence to raise a disputed issue of material fact on the non-movant).

## DISCUSSION

Thompson Thrift's argument—that the existence of the written contract renders any fact issue moot—is true with respect to the quantum meruit theory,[2] so long as the scope of the contract is comprehensive, governing the work at issue here. *Black Lake Pipe Line Co. v. Union Constr. Co.*, 538 S.W.2d 80, 86 (Tex. 1976), *overruled on other grounds, Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989). "In determining whether the work was required by the contracts we must determine (1) whether the work was extra and (2) whether the contracts made provision for the type of extra work performed." *Id*.

As to the breach of contract claim, Thompson Thrift again relies on the comprehensive scope of the contract. It argues that its requirement of written change orders, issued in advance, precludes liability to pay D2 for any of its claims because D2 did not obtain such written change orders. D.E. 21-2, p. 7 (¶ 7). So both theories turn on whether the haul-off of excess soil was extra work within the contemplation of the contract and whether appropriate contingencies for payment were included in the contract.

---

[2] Under Texas law, "[r]ecovery on an express contract and on quantum meruit are inconsistent. Where there exists a valid express contract covering the subject matter, there can be no implied contract." *Woodard v. Sw. States, Inc.*, 384 S.W.2d 674, 675 (Tex. 1964); *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 454 (5th Cir. 2001) (applying Texas law).

D2 alleged, and now argues, that the contract should be construed consistent with industry usage to limit its scope. In that regard, calling the site "balanced," means that there will be no removal of excess soil from the project site. Consequently, if excess soil is generated that needs to be hauled away, that work is outside the scope of the work governed by the contract and must be paid for separately.[3]

Thus the Court must determine whether the scope of the contract is broad enough and certain enough to preclude consideration of contrary evidence regarding this industry meaning. Thompson Thrift represents, "[I]t is undisputed that the parties' contract covered all excavation work and also contained provisions for extra work." D.E. 21, p. 2. This assertion is incorrect or misleading under the circumstances. The extent of the scope of the work governed by the contract is hotly contested.

According to the Subcontract,[4] its scope is set out in Exhibit B1, as revised by Exhibit B2, which includes the provision: "All spoils and excess soils created as a result of execution of the work described herein and work by others shall be relocated on the project site to location designated by TTC Superintendent." D.E. 21-2, p. 30 (¶ 5(a)). *See also, id.*, p. 32 (¶ 4(f)). Exhibit B1 originally included a paragraph 5(a) subsidiary provision: "This is a balanced site. It shall be this subcontractor's responsibility to balance site. Change orders for import/export will not be accepted." D.E. 21-2, p. 33 (¶ 5(a)(i)).

---

[3] Alternatively, D2 argues that Thompson Thrift waived any requirement for written change orders through its course of performance and request for the removal of the soil while promising additional compensation for the work. Because of the disposition of the question of the scope of the contract, the Court need not, and does not, address this alternate summary judgment response.

[4] Subcontract, D.E. 21-2, p. 5 (¶ 4).

However, in Exhibit B2's revision, the body of paragraph 5(a) is edited in a manner not relevant here, but omits mention of the subsidiary provision with its absolute language. Instead, as a "New Item," Exhibit B2 recites in more flexible terms: "Site is consider [sic] to be balanced and no import or export of material are anticipated." D.E. 21-2, p. 30 (¶ 6(b)).

Thompson Thrift argues that the subcontract placed the burden on D2 to review the matter and determine whether excess soil would be generated. By executing the subcontract, it argues, D2 assumed the risk of any expense related to hauling off excess dirt. The provision upon which Thompson Thrift relies for this argument reads:

> Execution of this Agreement by the Subcontractor is a representation that the Subcontractor has visited the Project site, become familiar with local conditions under which the Work is to be performed and correlated personal observations with requirements of the Contract Documents. The Subcontractor shall evaluate and satisfy itself as to the conditions and limitations under which the Work is to be performed, including without limitation: (1) the location, condition, layout, and nature of the Project site and surrounding areas; (2) generally prevailing climatic conditions; (3) anticipated labor supply and costs; (4) availability and cost of materials, tools, and equipment; and (5) other similar issues. Accordingly, Subcontractor shall not be entitled to an adjustment in the Contract Price or an extension of time resulting from Subcontractor's failure to fully comply with this paragraph.

D.E. 21-1, p. 6 (¶ 4). Thompson Thrift does not supply any basis for equating "the conditions and limitations under which the Work is to be performed" with essentially second-guessing the engineering work that went into the generation of the contract specifications that rendered a "balanced site" representation.

On the whole, the Court is not convinced that the contract language, on its face, bears out Thompson Thrift's argument that it governs the terms upon which excess soil would be removed from the site. Instead, it anticipated that no excess soil would be generated, leaving one to guess what might happen if it were generated.

While the contract language is less than convincing, this determination need not be made in isolation. Also before the Court are D2's factual allegations, assumed as true. If those allegations may legally be considered to contradict the terms of the contract as Thompson Thrift construes them, then summary judgment cannot issue.

Consideration of D2's assertions, based on matters outside the four corners of the subcontract, turns on the application of the parol evidence rule. As this Court is sitting in diversity jurisdiction, the Court applies the parol evidence rule of Texas. *Harville Rose Serv. v. Kellogg Co.*, 448 F.2d 1346, 1349 (5th Cir. 1971). Under that rule, evidence offered contrary to the apparent terms of an integrated contract[5] is admissible only if the contract is incomplete or ambiguous. *Jack H. Brown & Co. v. Toys "R" Us, Inc.*, 906 F.2d 169, 173 (5th Cir. 1990) (applying Texas law).

"In Texas, whether the language of a contract is ambiguous is a question of law for the court." *Hennigan v. Chargers Football Co.*, 431 F.2d 308, 314 (5th Cir. 1970) (citing *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex. 1968)). Thompson Thrift observed that neither party has pled any ambiguity in the contract. D.E. 34, p. 3. *See* D.E. 1-2, 33, 39. However, "A court may conclude that a contract is

---

[5] Contracts are presumed integrated. *N. K. Parrish, Inc. v. Sw. Beef Indus. Corp.*, 638 F.2d 1366, 1368-69 (5th Cir. 1981) (applying Texas law). Furthermore, the Subcontract Agreement contains an express integration clause. D.E. 21-2, p. 17 (¶ 22).

ambiguous even in the absence of such a pleading by either party." *Sage St. Assocs. v. Northdale Const. Co.*, 863 S.W.2d 438, 445 (Tex. 1993).

After describing the binding nature of all of the complementary contract documents, the Subcontract Agreement recites,

> The Subcontractor acknowledges and agrees that the Contract Documents are sufficient to provide for the completion of the Work and that the Work includes work whether or not shown or described which reasonably may be inferred to be required or useful for the completion of the Work *in accordance with* applicable laws, standards, regulations, codes, and ***customary standards of the construction industry***.

D.E. 21-2, p. 5 (¶ 4) (emphasis added). This provision recognizes that the contract terms are incomplete and subject to interpretation based on "customary standards," which by definition either inserts ambiguity into the document or guarantees the consideration of this extrinsic evidence.[6]

D2 has alleged that, in the construction site work industry, calling the project "balanced" meant that import or export of dirt was not included. D.E. 1-2, p. 6. This is consistent with at least some of the contract terms indicating that such work was not anticipated. Thus there is a fact issue whether it was reasonable to infer that export of soil was "required or useful for the completion of the Work." D.E. 21-2, p. 5 (¶ 4).

Because the subcontract is ambiguous and D2 has alleged a cognizable basis for construing it to exclude the work at issue in this case, Thompson Thrift has failed to show

---

[6] Industry standards may be considered to some extent even without an express reference to them or a finding of ambiguity. *See generally, Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726, 731 & n.5 (Tex. 1981) (permitting consideration of certain surrounding circumstances even where contract is otherwise unambiguous); *Intratex Gas Co. v. Puckett*, 886 S.W.2d 274, 278 (Tex. App.—El Paso 1994, no writ) (considering commercial context of the transaction). By expressly incorporating them, the Court cannot find that the subcontract is unambiguous on its face such that the standards expressly incorporated would have to be excluded.

that it is entitled to judgment as a matter of law. The terms of the Subcontract Agreement, alone, do not pretermit D2's claims.

This is not to say that the Court has found that the removal of excess dirt was necessarily outside the scope of the contract. The motion, as written, does not require such a finding and it would be improper on this summary judgment. The Court simply accepts Thompson Thrift's concession of this fact issue for purposes of its motion. In the event D2 offers admissible evidence to support its allegations, the subcontract's scope will be a fact question for the jury to decide.

Because Thompson Thrift conceded the truth of D2's allegations, the Court did not consider the Affidavits of Skip Sandell or Rebecca Wahl. The objections to those Affidavits are OVERRULED AS MOOT.

## CONCLUSION

For the reasons set out above, the Court GRANTS the motions for leave (D.E. 34 and 37), OVERRULES AS MOOT the objections to D2's evidence, and DENIES the motion for summary judgment (D.E. 21) because Thompson Thrift has failed to demonstrate that the terms of the Subcontract Agreement apply to the accumulation of excess soil and its haul-off.

ORDERED this 26th day of September, 2017.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE