United States District Court
Southern District of Texas

**ENTERED**

July 26, 2021

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| D2 EXCAVATING, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:16-CV-538 |
| | § | |
| THOMPSON THRIFT CONSTRUCTION, | § | |
| INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER ON MOTIONS REGARDING JUDGMENT

On July 30, 2019, this Court issued its final judgment in favor of Plaintiff D2 Excavating, Inc. (D2) and against Defendants Thompson Thrift Construction Inc. and Fidelity and Deposit Company of Maryland (jointly TTC). The breach of contract award included:

- Actual damages for breach under Texas common law in the amount of $338,656.53[1];

- Attorney's fees under the prompt pay statute, Texas Property Code § 28.005(b), mechanic's lien statute, Texas Property Code § 53.156, and the general statutory provision for attorney's fees on contract actions, Texas Civil Practice and Remedies Code § 38.001 in the amount of $356,080.91;

- A mechanic's lien for the contract damages and attorney's fees under Texas Property Code § 53.156;

- Prejudgment interest under the prompt pay statute, Texas Property Code § 28.004 in the amount of 18% per annum from May 1, 2016, to the date of judgment (through July 29, 2019, the last date before the original judgment);

---

[1] This is the sum of $81,068 for unpaid work and $257,588.53 for excavation of unanticipated excess soil.

- Costs taxed under Federal Rule of Civil Procedure 54(d)(1) in the amount of $22,435.13; and

- Postjudgment interest under 28 U.S.C. § 1961.

D.E. 140, 151, 152, Minute Entry for August 30, 2019 (regarding costs).  The Court further issued a take-nothing judgment on TTC's counterclaims.  D.E. 151.[2]

TTC appealed the judgment to the Fifth Circuit Court of Appeals, which held as follows:

> We AFFIRM the judgment for the $81,068 in unpaid work and the related prompt payment statute and lien remedies for that breach of contract. We REVERSE the judgment of $257,588.53 for the "excavation of unanticipated excess soil" and RENDER judgment for Thompson on those breach of contract and quantum meruit claims. We REMAND for modification of the judgment consistent with this opinion.

D.E. 186, p. 13.[3]

Now before the Court are two motions related to the modification of the judgment:

- D2's Motion to Enter Amended Final Judgment (D.E. 188), seeking a judgment in its favor on the same bases, with the actual damages and prejudgment interest awards reduced pursuant to the Fifth Circuit's holdings and seeking additional attorney's fees on appeal in the amount of $158,798.93.  *See also*, D.E. 189 (TTC's response) and D.E. 191 (D2's reply); and

- TTC's Motion for Relief from Award of Attorney's Fees, Costs, and Interest (D.E. 190), arguing that the Fifth Circuit's holding has the effect of requiring vacatur of the entire judgment.  *See also*, D.E. 192 (D2's response) and D.E. 193 (TTC's reply).

---

[2]  TTC sued for breach of contract, breach of warranty, indemnification, and to declare D2's lien unenforceable and fraudulent, seeking damages of at least $167,675.40, plus attorney's fees, interest, costs, and statutory and exemplary damages against D2.  D.E. 33.

[3]  *D2 Excavating, Inc. v. Thompson Thrift Constr., Inc*., 973 F.3d 430, 438 (5th Cir. 2020).

For the reasons set out below, the Court GRANTS IN PART and DENIES IN PART D2's motion and DENIES TTC's motion.

## DISCUSSION

### A. Standard for Modification of Judgment on Remand

This Court must strictly adhere to the mandate of the Fifth Circuit after a judgment is appealed.

> The usual rule is that "[A] mandate is completely controlling as to all matters within its compass, but on remand the trial court is free to pass upon any issue which was not expressly or impliedly disposed of on appeal."   Likewise we have adopted the view that "whatever was before the appellate court and disposed of by the decree is considered as finally settled and becomes the law of the case."

*Gulf Coast Bldg. & Supply Co. v. Int'l Broth. of Elec. Workers, Local No. 480, AFL-CIO*, 460 F.2d 105, 107 (5th Cir. 1972) (citations omitted).

The preclusive effect of the Fifth Circuit's mandate ordinarily encompasses subsidiary issues that were not appealed.   In *Gulf Coast*, the issue of prejudgment interest was not assigned as error in the court of appeals.   But the judgment was affirmed. Therefore, the district court did not have the power to alter the prejudgment interest award.   "The entire judgment was presented to this court and all issues therein were expressly or impliedly disposed of on the appeal." *Id*. at 108.

In subsequently describing *Gulf Coast*, the Fifth Circuit clarified, "The award of prejudgment interest was part of the judgment, and the first appeal thus necessarily disposed of that issue." *Clements v. Steele*, 786 F.2d 673, 675 (5th Cir. 1986); *see also, Fid. & Deposit Co. of Md. v. Usaform Hail Pool, Inc*., 463 F.2d 4, 7 (5th Cir. 1972)

("Our affirmance on the prior appeal is conclusive as to the entire order appealed from, even those issues as to which no point was made on appeal."). And with respect to attorney's fees, the Fifth Circuit wrote, "It is clear from *Gulf Coast* that if the amount of the attorney fee had been determined and included in the judgment in this case, the district court would have been precluded from modifying the judgment after remand." *Equitable Life Assur. Soc. of U.S. v. MacGill*, 551 F.2d 978, 984 (5th Cir. 1977) (describing the result when the entire judgment is affirmed).

A remand does not reopen a legal theory not urged or accepted in the original appeal. *Calderon v. Presidio Valley Farmers Ass'n*, 863 F.2d 384, 387 (5th Cir. 1989). Any such additional arguments must have been presented for determination by the court of appeals by seeking rehearing, modification of the opinion, or recall of the mandate. *Leroy v. City of Hous.*, 906 F.2d 1068, 1077 (5th Cir. 1990); *Farr v. H.K. Porter Co., Inc.*, 787 F.2d 1014, 1015 (5th Cir. 1986). The job of this Court is to modify the judgment to conform to the Fifth Circuit's holding.

## B. Rule 60(b)(5) Relief

Rule 60(b) provides, "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . (5) . . . it is based on an earlier judgment that has been reversed or vacated . . . ." The scope of Rule 60(b) is a question of law and is reviewed de novo by the court of appeals. *Lowry Dev., L.L.C. v. Groves & Assocs. Ins., Inc.*, 690 F.3d 382, 385 (5th Cir. 2012). Once the legal question of whether relief is available has been answered in the affirmative, the question whether Rule 60(b) relief should be granted is committed to the

court's sound discretion. *Banik v. Ybarra*, 828 Fed. App'x 214, 215 (5th Cir. 2020) (citing *Edwards v. City of Hous.*, 78 F.3d 983, 995 (5th Cir. 1996) (en banc)). And TTC, as the party seeking relief, bears the burden of showing that Rule 60(b) relief should be granted. *Id.* (citing *Frew v. Janek*, 780 F.3d 320, 327 (5th Cir. 2015)).

Where damages are reduced, as in this case, Rule 60(b)(5) may be invoked to seek modification of an award of attorney's fees that was liquidated in the prior judgment and left undisturbed in the appellate court. *Flowers v. S. Reg'l Physician Servs., Inc.,* 286 F.3d 798, 802 (5th Cir. 2002). It may also be used to challenge an award of costs and prejudgment interest. *Banik v. Ybarra*, 805 Fed. App'x 266, 267, 269 (5th Cir. 2020) (costs); *AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*, 579 F.3d 1268, 1275 (11th Cir. 2009) (prejudgment interest); *Koenning v. Suehs*, CIV.A. V-11-6, 2013 WL 6491075, at *2 (S.D. Tex. Dec. 9, 2013) (attorney's fees and costs).

Rule 60(b)(5) applies even if the movant did not appeal these awards.

> If no appeal was taken from the award, some means must be found to avoid the unseemly spectacle of enforcing a fee award based on a judgment that has been reversed; if court and parties cannot cooperate in a more efficient procedure, relief should be available under Civil Rule 60(b)(5).

15B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice & Procedure § 3915.6 (2d ed. 2020); *Flowers*, 286 F.3d 798, 802. The Advisory Committee Notes for the 1946 amendment of Rule 60(b) states, "It should be noted that Rule 60(b) does not assume to define the substantive law as to the grounds for vacating judgments, but merely prescribes the practice in proceedings to obtain relief."

Rule 60(b), by itself, does not allow or preclude the type of wholesale relief TTC requests. According to the general rules applicable to the mandate, this Court must modify the judgment only insofar as is necessary to make it consistent with the Fifth Circuit's holding. By virtue of Rule 60(b)(5), this Court is empowered to consider issues not expressly addressed by the Fifth Circuit, such as attorney's fees and costs, to ensure that they are consistent with the Fifth Circuit's ruling. The only benefit of Rule 60(b)(5) is that it relieves this Court—procedurally—of the general prohibition against altering matters not appealed or matters that are silently affirmed.

### C. No Exceptional Circumstances

TTC argues that the usual rules regarding the mandate and the law of the case do not apply here because this case presents exceptional circumstances. The Fifth Circuit has recognized exceptions to the mandate rule, writing:

> Despite its importance, the mandate rule is a discretionary device and not immutable. Three exceptions to the imposition of this rule are recognized: (1) Introduction of evidence at a subsequent trial that is substantially different; (2) an intervening change in controlling authority; and (3) a determination that the earlier decision was clearly erroneous and would work a manifest injustice.

*United States v. Pineiro*, 470 F.3d 200, 205–06 (5th Cir. 2006) (footnotes omitted); *Webb v. Davis*, 940 F.3d 892, 897 (5th Cir. 2019). Because this case was not remanded for a new trial, the first exception does not apply. Neither has TTC identified any authority that would trigger the second exception. What we are left with is the suggestion that all aspects of the earlier decision are clearly erroneous as a result of the Fifth Circuit's reversal of the damages related to the excess soil removal.

As the Fifth Circuit summarizes, "Mere doubts or disagreement about the wisdom of a prior decision of this or a lower court will not suffice for this exception.   To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must be dead wrong." *Hopwood v. Texas*, 236 F.3d 256, 272–73 (5th Cir. 2000).   As will be noted below, this Court does not find any prior decision dead wrong such that this Court can exceed the mandate on remand.

### D.  Modification of the Judgment

The Fifth Circuit stated:

> We AFFIRM the judgment for the $81,068 in unpaid work ***and the related prompt payment statute and lien remedies*** for that breach of contract.   We REVERSE the judgment of $257,588.53 for the "excavation of unanticipated excess soil" and RENDER judgment for Thompson ***on those breach of contract and quantum meruit claims***.   We REMAND for ***modification*** of the judgment ***consistent*** with this opinion.

D.E. 186, p. 13 (emphasis added).   This judgment requires the Court to enter the $81,068 award and reduce the amount of prejudgment interest as well as the amount secured by the lien, to correspond to the principal amount of $81,068.   Those remedies were affirmed by the plain language of the holding.

### 1.  Breach Of Contract Damages

TTC argues that—on full review of the case—if there was no breach of contract with respect to the excess soil removal, there was no breach of contract at all to support the award of damages.   But that argument is precluded by the Fifth Circuit opinion.   For instance, the court stated:

> ***Thompson's prior breach*** and its failure to manage the
> construction site excused D2's failure to perform. The district
> court found that management of the site was so deficient that
> D2 had to regrade the same areas as many as six times and
> was unable to complete its work in other parts of the site,
> justifying D2's cessation of work. That finding is not clear
> error.

D.E. 186, p. 12 (emphasis added).  TTC, like this Court, is bound by the Fifth Circuit's

affirmance of the breach of contract finding against TTC.  TTC has not demonstrated that

this Court or the Fifth Circuit was "dead wrong" in finding or affirming that TTC

breached the contract by interfering with D2's ability to perform its part of the contract.

Consistent with the directive of the Fifth Circuit opinion and mandate, this Court

**MODIFIES** the judgment to reflect an award of breach of contract damages in the

amount of **$81,068**.

### 2. Prejudgment Interest

Prejudgment interest is clearly a related remedy under the prompt payment statute,

which the Fifth Circuit also expressly affirmed.  D.E. 186; Tex. Prop. Code § 28.004.

TTC challenges any award of prejudgment interest because the demand was "bloated"

with the demand for the cost of excess soil removal and it disputed in good faith all or

part of the demand.  TTC claims that D2 did not qualify for remedies under the prompt

payment statute if the only breach of contract claim that survives is less than the demand

made.  Thus, it contends, there are no related remedies to apply to the Fifth Circuit's

single breach of contract holding and any directive in that regard is clearly erroneous.

TTC has not demonstrated that it is entitled to relief because its argument disregards the letter and spirit of the mandate,[4] and because this application of the prompt payment statute is not wrong.  First, when the mandate allowed for modification of related remedies, it was speaking in terms of the reduction in the amount of prejudgment interest and the amount subject to the lien to correspond with the reduced contract damages.  It did not authorize a reconsideration of whether D2 was entitled to those remedies at all.  Second, while the prompt payment statute allows TTC to withhold the amount in dispute, the prejudgment interest remedy applies to any unpaid amount demanded and found due under the chapter.  Tex. Prop. Code §§ 28.003, 28.004.  TTC has failed to supply any authority for the proposition that the demand risks being held ineffective if it is not made for the amount ultimately found due and owing.

The Fifth Circuit found that the amount due was $81,068.  The claim was presented in a demand triggering the prompt payment statute's remedies—a finding not disturbed on appeal.  D.E. 163.  "[T]he related prompt payment statute and lien remedies for that breach of contract" affirmed by the Fifth Circuit thus includes 18% annual interest.  Tex. Prop. Code § 28.004.  This accrues at the amount of $39.98 per diem[5] for 1,185 days (from May 1, 2016 to July 29, 2019)[6] for a total of $47,376.30.

---

[4]  *E.g., Tollett v. City of Kemah*, 285 F.3d 357, 364 (5th Cir. 2002) (lower court must follow the letter and the spirit of the higher court's mandate).

[5]  Eighteen percent of $81,068 is $14,592.24.  Divided by 365 days per year, that figure renders a per diem rate of $39.98.

[6]  The statutory interest begins on the 36th day after demand for payment and ends the date prior to the day on which judgment is entered.  The accrual date and judgment date were established by the prior judgment and were not challenged or altered on appeal.

TTC's argument that the demand was improper and did not trigger the prompt payment remedies is inconsistent with the mandate and does not demonstrate any clear error or manifest injustice.  The Court **MODIFIES** the judgment to award **$47,376.30** in prejudgment interest.

### 3. Attorney's Fees

#### a.  Trial Fees.

The Fifth Circuit does not expressly address the amount of attorney's fees that survive.  Yet those fees were awarded, in part, as a "related prompt payment and lien" statute remedy and as such, were affirmed, albeit subject to modification.  D.E. 151 (relying on Tex. Prop. Code §§ 28.005(b), 53.156), 186.  This Court's award of trial attorney's fees was also supported by Texas Civil Practice and Remedies Code § 38.001—a matter not separately addressed in the Fifth Circuit opinion.  D.E. 140, 151. Any doubt as to whether the Court has the power to reevaluate the attorney's fee award on remand under either statutory route, however, is eliminated by Rule 60(b)(5) and the authorities discussed above.[7]

The scope of the Court's review remains cabined by the mandate rule.  The Court does not evaluate the trial attorney's fee award anew because the award was not appealed and TTC did not articulate any objection to the propriety of the amount of the award under the prior judgment.  Instead, the Court evaluates only whether the Fifth Circuit's decision on the merits requires a corresponding adjustment of the attorney's fees.

---

[7]   *Compare Equitable Life*, 551 F.2d at 984 (silent affirmance of judgment containing liquidated attorney's fees is unassailable on remand), *with Flowers*, 286 F.3d at 802 (Rule 60(b)(5) permitting reconsideration of attorney's fees consistent with reduction in damages award on appeal).

This Court has rejected TTC's argument that there was no breach of contract or prompt payment statute violation after the Fifth Circuit's ruling.  Thus, D2 qualifies for an award of attorney's fees under both of the relevant Texas codes.  The only remaining arguments are:  (1) whether D2 remains a prevailing party after the elimination of the portion of its judgment for the excess soil excavation; and (2) whether the amount of the fees awarded should be reduced on the basis of D2's reduced recoveries on its other remedies.

The parties agree that "State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision."  *See, e.g., Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).  As noted, Texas law supplies the rule of decision here through two avenues:  (1) the Texas Civil Practice and Remedies Code § 38.001 and (2) the Texas Property Code §§ 28.005(b), 53.156.  Each avenue carries with it a slightly different standard.

**Authority for Fees Under Civil Practice and Remedies Code**.  "To recover attorney's fees under Section 38.001, a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages."[8]  *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) (citing *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 437 (Tex. 1995)).  Under § 38.001, when a prevailing party in a breach of

---

[8]  An economic benefit short of an award of damages will also support an award of attorney's fees.  *F.D.I.C. v. Graham*, 882 S.W.2d 890, 901 (Tex. App.—Houston [14th Dist.] 1994, no writ).  Equitable relief will also qualify. *Ventling v. Johnson*, 466 S.W.3d 143, 154 (Tex. 2015).  Because D2 was awarded damages, the Court does not dwell on the variations in eligible relief.

contract suit seeks attorney's fees, an award of fees is mandatory if there is proof that the fees are reasonable. *See, e.g., Ventling v. Johnson*, 466 S.W.3d 143, 154 (Tex. 2015).

TTC's argument is that it is now the prevailing party because it successfully defended against the award of damages for excess soil excavation.   TTC claims that this was the "main issue," representing the greatest monetary dispute (other than attorney's fees).   Therefore, it—and not D2—is the prevailing party in the case.   But D2 can be a prevailing party even if it did not prevail to the extent of its original contention.   *See generally, Criton Corp. v. Highlands Ins. Co*., 809 S.W.2d 355, 357 (Tex. App.— Houston [14th Dist.] 1991, writ denied) (quoting Black's Law Dictionary, Revised Fourth Edition for the definition of "prevailing party").   And D2 did prevail on its theories, recovering a judgment against TTC.

In contrast, TTC's litigation efforts failed in all respects other than limiting D2's recovery.   According to the Texas Supreme Court, to prevail means obtaining actual and meaningful relief that materially alters the parties' legal relationship.   *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 485–86 (Tex. 2019).   While both sued for breach of contract, D2 prevailed on the question of who breached the contract.   D2 then prevailed on the recovery of damages for the breach, even though the amount of damages was less than originally sought.   D2 prevailed on whether TTC violated its prompt payment rights.   D2 prevailed on enforcing its lien—both by prosecuting its claim and defending against TTC's counterclaim.   D2 prevailed on each of TTC's other counterclaims in which TTC sought a money judgment against D2 or otherwise sought to negate D2's prompt payment and lien rights.

D2 is entitled to a "net recovery" in that only D2 is entitled to monetary relief—or any type of relief.  TTC failed to recover on any of its claims and cannot be the prevailing party.  *See Intercontinental Group P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 655 (Tex. 2009).  The Court thus rejects TTC's argument that by limiting D2's recovery, it has achieved a victory over D2 on the "main issue," making it the "prevailing party." D2 meets the requirements for recovery of § 38.001 attorney's fees and TTC does not. Therefore, D2 is entitled to its attorney's fees at trial under § 38.001 to the extent that the Court finds them reasonable.

**Authority for Fees Under Property Code**.  Section 28.005(b) of the Property Code (the Prompt Payment Act) permits a court to award "costs and reasonable attorney's fees as the court determines equitable and just."  In relevant part, Property Code § 53.156 provides: "In any proceeding to foreclose a lien or to enforce a claim against a bond issued under Subchapter H, I, or J or in any proceeding to declare that any lien or claim is invalid or unenforceable in whole or in part, the court shall award costs and reasonable attorney's fees as are equitable and just."  While both sections establish the test as being what is "equitable and just," section 28.005(b) makes the award discretionary, using the term "may award."  Under section 53.156, the award "shall" be made.

Absent from these statutes is any requirement that the award be predicated on the party's prevailing status.  While there appear to be no cases construing the "equitable and just" language in these sections of the Property Code, similar language in a parallel

provision of the Texas Declaratory Judgment Act[9] has been explained.  And it is not tethered to prevailing party status.

> [T]he award of attorney's fees in declaratory judgment actions is clearly within the trial court's discretion and is not dependent on a finding that a party "substantially prevailed." We will therefore remand this cause to the district court for it to consider and exercise its discretion on the amount of attorney's fees, if any, which should be awarded to the parties in this case.

*Barshop v. Medina Cnty. Underground Water Conservation Dist*., 925 S.W.2d 618, 637–38 (Tex. 1996) (refusing to reverse and render the attorney's fee award when the court reversed on the merits).

Thus, the bar set by the language used in the Property Code sections is lower than that used in § 38.001 for awarding attorney's fees.  As set out above, the Court has determined that D2 has met the higher bar requiring "prevailing party" status.  In addition and in the alternative, the Court determines that D2 is entitled to attorney's fees under the lower bar of what is "equitable and just."  This case was hard-fought and D2 has obtained a judgment for a significant sum.

**Amount of Fees**.  TTC urges that D2's loss of the claim for the soil excavation costs disqualifies it from an award of any attorney's fees.  The Court has rejected that approach in finding that D2 remains the prevailing party.  The Court also rejects any argument that the attorney's fees could or should have been segregated by damages category.  TTC does not now present any evidence or argument as to the amount that it

---

[9]  "In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just."  Tex. Civ. Prac. & Rem. Code § 37.009.

believes should be segregated or denied and it has previously waived the segregation issue as a procedural matter. *Green Intern., Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997) (citing *Hruska v. First State Bank of Deanville*, 747 S.W.2d 783, 785 (Tex.1988)). Also, as a substantive matter, the Court disagrees with TTC's suggestion that a reduction is appropriate.

D2 has achieved no small victory.  While it does not recover for the substantial extra costs incurred in exporting soil from the site, the legal work expended on that damage category is not separable from the legal work on other damage categories on which it succeeded. *See generally, Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006) ("To the extent [legal] services would have been incurred on a recoverable claim alone, they are not disallowed simply because they do double service.").

TTC used the existence of excess dirt as the only evidence that D2 had breached the contract by not properly excavating the site to specifications.  And it took that position despite the fact that the excavation work had been scientifically tested and found to be fully compliant.  The excess dirt was also part and parcel of TTC's mismanagement of the site—its own breach of contract—because it altered the planned sequencing of the site excavation and interfered with the work of other subcontractors.  This then prevented D2 from accessing areas to complete performance of its contract requirements.  It was essential to D2's contract recovery to show TTC's breach in this regard.

Fees attributable to the defense of a counterclaim are recoverable when the facts necessary for the plaintiff to recover on its claim also serve to defeat the counterclaim.

*RepublicBank Dallas, N.A. v. Shook*, 653 S.W.2d 278, 282 (Tex. 1983).  Consequently, in evaluating what was reasonable, necessary, equitable, and just in terms of attorney's fees, the Court will not carve out any portion of those fees as unrecoverable based on their additional relationship to the one damage category rejected by the Fifth Circuit.

Therefore, the only question is whether the attorney's fee award should be reduced because of the reduction in damages.  In other words, was the attorney's fee award influenced by the error of awarding D2 the soil excavation costs?  *Young v. Qualls*, 223 S.W.3d 312, 314–15 (Tex. 2007).   Whether a fee is "reasonable and necessary" or "equitable and just" certainly includes consideration of the results achieved.  *Johnson v. Ga. Highway Exp., Inc*., 488 F.2d 714, 718 (5th Cir. 1974) (including as one of twelve factors, "The amount involved and the results obtained"), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989) (rejecting the treatment of a contingency fee contract as a cap on reasonable fees); *Rohrmoos,* 578 S.W.3d at 500.   However, that consideration is not a dominant one.

Under *Rohrmoos*, the lodestar amount is presumptively reasonable and is adjusted only if it is "overcome by other factors not accounted for in the base lodestar figure." 578 S.W. 3d at 496.  The ratio between the damages award and the attorney's fee award is not a compelling factor if the work was required to competently prosecute or defend against the claims in the case.  *See Morrell Masonry Supply, Inc. v. Lupe's Shenandoah Rsrv., LLC*, 363 S.W.3d 901, 911 (Tex. App.—Beaumont 2012, no pet.); *Bank of Tex. v. VR Elec., Inc*., 276 S.W.3d 671, 685 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (approving fees that were four times the damages recovered where there was no

controverting evidence or argument calling the services rendered into doubt); *Cordova v.*
*Sw. Bell Yellow Pages, Inc*., 148 S.W.3d 441, 449 (Tex. App.—El Paso 2004, no pet.)
(fees are not excessive merely because they exceed the amount recovered on the claim).

TTC's counterclaims and position in this case required a strong response. TTC
does not offer controverting evidence on attorney's fees or challenge specific time entries
or amounts. The Court will not fault D2's counsel for meeting the challenges of this case
under the facts.

The Court FINDS that the award of trial attorney's fees was not influenced by the
erroneous award of damages for the exportation of excess soil. The issue of the excess
soil had to be litigated in the course of prosecuting the claim for the unpaid contract
balance and it had to be litigated to defeat TTC's counterclaim. The Court again awards
$356,080.91 as attorney's fees at trial that are reasonable and necessary, as well as
equitable and just.

### b. Attorney's Fees on Appeal.

D2 now requests additional attorney's fees for its defense of the appeal. TTC
opposes any such award on the same arguments rejected above. TTC has offered no
authority for evaluating attorney's fees separately by phase of case. And under these
facts and results, D2 prevailed overall. TTC opposed D2's recoveries, and submitted its
counterclaims to the Fifth Circuit in the hope of obtaining a recovery. D2 had to incur
fees to defend not only the awards it had recovered, but the denial of TTC's
counterclaims, which generated additional reasonable attorney's fees.

If trial attorney's fees are mandatory under § 38.001, then appellate attorney's fees are also mandatory when proof of reasonable fees is presented. *DaimlerChrysler Motors Co., LLC v. Manuel*, 362 S.W.3d 160, 199 (Tex. App.—Fort Worth 2012, no pet.); *see also*, *Gill Sav. Ass'n v. Chair King, Inc*., 797 S.W.2d 31, 32 (Tex. 1990) (per curiam) (remanding for retrial on appellate attorney's fees under § 38.001 when there was some evidence to support an award). The Court finds that it is also equitable and just to award appellate attorney's fees in this case for the same reason that the award of trial attorney's fees was appropriate.

The burden of proof to demonstrate appropriate attorney's fees is on the claimant. *Rohrmoos*, 578 S.W.3d at 501–02. D2 submitted attorney's fee affidavits, along with time records for counsel, requesting a total award of $158,798.93. TTC has not offered any controverting evidence. Neither has it articulated a specific challenge to any part of the evidence of the attorney's rates, hours, qualifications, or assessment of the reasonableness of the claim.

The Court may take the attorney's fee testimony as true as a matter of law where it is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion on it. *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990). TTC has not controverted the testimony of D2's counsel.

The Court has conducted a review of the evidence and finds that the requested amount should be reduced by a substantial amount. "Charges for duplicative, excessive, or inadequately documented work should be excluded." *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 762 (Tex. 2012). Counsel's billing records reveal a great deal of such time

entries among the multiple attorneys working on the case. This includes: (a) conferences and communications among attorneys, with each participating attorney billing full value for the time; (b) multiple attorneys reviewing the same documents; (c) multiple attorneys being responsible for the same services, some of which are more appropriately clerical, such as confirming a court's receipt of filings, calendaring, and submitting requests for the attorney's admission to the court; and (d) repetitive entries without sufficient detail.

Courts may reduce the lodestar amount by a blanket percentage to compensate for a deficiency in the attorney's exercise of billing judgment for any work that was unproductive, excessive, or redundant. *E.g., Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006) (10% reduction for lack of billing judgment); *Tech Pharmacy Servs., LLC v. Alixa Rx LLC*, 298 F. Supp. 3d 892, 906 (E.D. Tex. 2017) (12% reduction for lack of billing judgment); *Preston Expl. Co., LP v. GSP, LLC*, CIV.A. H-08-3341, 2013 WL 3229678, at *9 (S.D. Tex. June 25, 2013) (collecting cases; assessing a 20% reduction for lack of billing judgment, vague entries, overstaffing, and billing for clerical work).

In sum, the attorney's fee affidavits do not recite the exercise of billing judgment to eliminate duplication or clerical matters, and the time records reflect a deficit in that regard. For the Court to itemize these duplications and clerical matters would be unduly time-consuming, given that the burden to do the work is assigned to D2 as claimant and the time entries are extensive. In such a situation, rough justice in the form of an across-the-board cut is appropriate. *DeLeon v. Abbott*, 687 Fed. App'x 340, 343 (5th Cir. 2017) (per curiam) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011) for the proposition that trial

courts should not be placed in the position of being "green-eyeshade accountants"). After a review of the itemized billing statement for the appellate legal services, the Court issues a 30% reduction of the amount requested.

The Court thus AWARDS appellate attorney's fees and expenses in the amount of $111,159.25.

### c. Attorney's Fees Continuing to Accrue.

In its reply in support of its motion for judgment, D2 requests additional attorney's fees for having to respond to TTC's opposition to entry of the requested modified judgment and to compensate for additional anticipated work. D.E. 191, p. 3. The Court declines to award additional fees for legal services rendered on remand at this time and **DENIES** the request without prejudice to raise the issue in a postjudgment motion.

### 4. Lien and Bond.

As the Fifth Circuit indicated, D2's lien remains intact to secure the affirmed contract damages. That amount is now $81,068.00 for breach of contract, $356,080.91 for trial attorney's fees, and $111,159.25 for appellate attorney's fees, requiring MODIFICATION of the amount of the lien to the sum of $548,308.16. Fidelity's liability on its bond remains, and is limited up to (but not to exceed) the full sum of Fidelity's indemnity bond, which is $581,605.50.

### 5. Costs.

TTC's only challenge to the award of costs is that D2 is no longer the prevailing party. On this issue, whether a party is a "prevailing party" for the purpose of taxable costs under Rule 54(d) is governed by federal law. *See Carter v. Gen. Motors Corp.*, 983

F.2d 40, 43-44 (5th Cir. 1993) ("[F]ederal procedural law ordinarily governs the award of costs in diversity cases."). Under Rule 54(d), "the decision to award costs turns on whether a party, as a practical matter, has prevailed." *Schwarz v. Folloder*, 767 F.2d 125, 130 (5th Cir. 1985). Having obtained a judgment against TTC, D2 has prevailed under the federal test and the Court may award costs on that basis. *Id*.

In the course of its appeal of the prior judgment, TTC did not contest the award of costs, which at that time had been determined to be $22,435.13. The time for doing so has passed. Fed. R. Civ. P. 54(d). As for costs of appeal, D2 remains the prevailing party and is entitled to those additional costs. D2 asserts that it will submit its bill of costs after entry of judgment pursuant to Rule 54(d) and they will be liquidated at that time.

**Postjudgment Interest**. The only dispute over postjudgment interest is whether any money judgment remains after TTC's challenges. Having rejected its arguments to eliminate the entirety of the money judgment award, the postjudgment interest award STANDS at the rate initially set by statute: 1.98 % and is calculated from the date of the original judgment, July 30, 2019. 28 U.S.C. § 1961; *see generally, Krieser v. Hobbs*, 166 F.3d 736, 747 (5th Cir. 1999) (indicating that postjudgment interest runs from the date of the judgment in which the damages were assessed, not from the date of a modified judgment). It is calculated on the basis of all monetary awards made in this judgment, including costs at trial. *Artis v. U.S. Indus. & Intern. Ass'n of Machinists & Aerospace Workers*, 822 F. Supp. 510, 512 (N.D. Ill. 1993).

**6. Counterclaim**.

This Court's denial of TTC's counterclaim was affirmed on appeal and remains a part of the modified judgment.

## CONCLUSION

For the reasons set out above, the Court GRANTS IN PART and DENIES IN PART D2's motion (granting all relief except for the amount by which its request for appellate attorney's fees was reduced and an amount for post-remand attorney's fees) and DENIES TTC's motion.   The Court will enter its judgment in a separate document pursuant to Rule 58(a) awarding the following relief:

- Actual damages for breach of contract under Texas common law in the amount of **$81,068**;

- Attorney's fees under the prompt pay statute, Texas Property Code § 28.005(b), mechanic's lien statute, Texas Property Code § 53.156, and the general statutory provision for attorney's fees on contract actions, Texas Civil Practice and Remedies Code § 38.001 in the amounts of **$356,080.91** for legal services rendered at trial and **$111,159.25** for legal services rendered on appeal;

- A mechanic's lien for the contract damages and attorney's fees under Texas Property Code § 53.156;

- Prejudgment interest under the prompt pay statute, Texas Property Code § 28.004 in the amount of 18% per annum from May 1, 2016, to the date of judgment (through July 29, 2019, the last date before the original judgment), for the sum of **$47,376.30**;

- Costs taxed under Federal Rule of Civil Procedure 54(d)(1) in the amount of **$22,435.13** at trial, along with costs of appeal (to be determined);

- Postjudgment interest under 28 U.S.C. § 1961 from July 30, 2019, until paid; and

- A take-nothing judgment on TTC's counterclaims.

ORDERED this 26th day of July, 2021.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE